**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE (ABINGDON) DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Chapter 12** |
| **TERRY PROPERTIES, LLC,** | ) | |
| | ) | **Case No. 16-71449** |
| Debtor. | ) | |
| | ) | |
| **TERRY PROPERTIES, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 16-07038** |
| | ) | |
| **FARM CREDIT OF THE VIRGINIAS, ACA,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on Cross-Motions for Summary Judgment filed by the Debtor, Terry Properties, LLC (the "Debtor"), and by Farm Credit of the Virginias, ACA ("Farm Credit"), in connection with a Complaint to avoid certain transfers by the Debtor to Farm Credit as fraudulent or voluntary conveyances pursuant to 11 U.S.C. §§ 544 and 548 and Va. Code §§ 55-80 and 55-81. The Debtor has also filed a Motion to Amend the Complaint. For the reasons set forth below, the Court will deny the Debtor's Motion for Summary Judgment, deny the Debtor's Motion to Amend the Complaint, grant Farm Credit's Motion for Summary Judgment, and dismiss the Complaint.

FACTUAL BACKGROUND

The Debtor filed a petition for relief in this Court under Chapter 12 of the Bankruptcy Code, 11 U.S.C. § 1201 et seq., on November 2, 2016. The present adversary proceeding was commenced on November 7, 2016. Although neither the Debtor nor Farm Credit filed any affidavits in support of or in opposition to the collective summary judgment motions, the essential facts can be gleaned from the record and the documents filed by the parties, none of which have been called into legitimate question.

Farm Credit has a long relationship with the Debtor's principals and predecessors. Farm Credit is the Debtor's primary and dominant creditor, holding as security for the Debtor's obligations to it, among other things, deeds of trust on all of the Debtor's real estate. The present dispute stems from a Loan Restructure Agreement dated October 19, 2015 (the "Agreement"), submitted as Farm Credit Ex. 4. The Agreement is between Farm Credit as Lender; the Debtor; Terry Dairy, LLC ("Dairy LLC"); David Wilmer Terry ("David Terry") and Jacob Jerome Terry ("Jacob Terry"), trustees of the Ernest Epperson Terry Trust, a testamentary trust (the "Trust"); and David Terry, Jason B. Terry, Jacob Terry, and Levi Ernest Terry individually. The individual Terrys and the Trust are jointly and severally defined as the "Borrower" in the Agreement.

As of the date of the Agreement, the Borrower, as defined above, was indebted to Farm Credit in connection with five different obligations: (1) a 2015 Non Revolver Loan in the original principal amount of $200,000.00, (2) a 2015 Fixed Rate Loan in the original principal amount of $1,034,189.35, (3) a 2012 Fixed Rate Loan in the original principal amount of $110,000.00, (4) a 2010 Non Revolver Loan in the original principal amount of $1,400,000.00, and (5) a 2009 Fixed Rate Loan in the original principal amount of $518,000.00, all as modified

or extended.  Farm Credit Ex. 4, pp. 1–2.  The foregoing obligations of the Borrower were secured by three credit line deeds of trust given by the Trust on properties located in Wythe and Smyth Counties, Virginia (the "CLDOTs").   The Grantor under each of the CLDOTs was the Trust, and each CLDOT secured any and all indebtednesses of the "Grantor," *i.e.*, the Trust, to Farm Credit.  The maximum principal amounts secured under the CLDOTs were $518,000.00, $1,400,000.00, and $110,000.00, respectively.

The Agreement recites that the Borrower submitted an Application for Restructuring to Farm Credit dated March 18, 2015, which Farm Credit found not acceptable.  However, the parties negotiated the terms and arrived at an agreement under which they mutually agreed upon a plan of restructure under the Farm Credit Act of 1971 and the accompanying regulations of the Farm Credit Administration.   Farm Credit Ex. 4, p. 3.  In the Agreement, the Borrower represented to Farm Credit that:

> [T]he Trust ha[d] outlived its intended purposes under the Last Will and Testament of Ernest Epperson Terry, and that the Borrower desire[d] and intend[ed] to dissolve and liquidate the Trust, with its assets and liabilities (including the liabilities of the Trust to [Farm Credit] with respect to the Loans and Loan Documents) being divided between, transferred to and assumed by the Dairy LLC and [the Debtor].

Farm Credit Ex. 4, ¶ 1.1. Paragraph 1.1 of the Agreement set forth several conditions for Farm Credit's agreement to the dissolution of the Trust and the transfer of the Trust's assets to the Debtor and Dairy LLC.   Among other provisions, the real property encumbered by the CLDOTs "shall be transferred to [the Debtor] by deed of assumption acceptable to [Farm Credit] in form and substance, pursuant to which [the Debtor] acknowledges and agrees by countersignature to assume all obligations of the Trust under and with respect to the Deeds of Trust, the Notes and the other Loan Documents."  Farm Credit Ex. 4, ¶ 1.1(b).

3

The Agreement further provides, in part, as follows:

> Upon transfer of the real estate from the Trust to [the Debtor] (which shall occur by deed of assumption approved by [Farm Credit] as described in Section 1.1(a) above), [the Debtor] shall take title subject to the lien of the Deeds of Trust, which it acknowledges. [The Debtor] agrees to perform all obligations under the Deeds of Trust, and will execute and deliver any and all documents and instruments requested by [Farm Credit] to evidence, replace, or restate and consolidate the Deeds of Trust.

Farm Credit Ex. 4, ¶ 2.2. The Agreement further provides that "[t]o facilitate such transfer and as a condition to the restructure of the Loans under this Agreement, Dairy, LLC and [the Debtor], jointly and severally, hereby expressly assume and promise to pay and perform all obligations of the Trust under the Notes, Deeds of Trust, and other Loan Documents to which the Trust is a party and agree to execute and deliver to Lender such additional documents and instruments as Lender requests to evidence such assumption and promise." Agreement, ¶1.1.

In connection with the Agreement, a Deed of Assumption was executed on October 19, 2015, and the Trust conveyed the real estate subject to the Farm Credit CLDOTs to the Debtor. Farm Credit Ex. 7. Contemporaneously with the execution of the Deed of Assumption—all on October 19, 2015—the Debtor executed a Credit Line Deed of Trust Modification and Substitution of Trustee for each of the three Farm Credit CLDOTs. The modification documents changed the definition of "Grantor" to Terry Properties, LLC (the Debtor), confirmed that the indebtedness secured included, without limitation, all indebtedness and obligations of the Terrys individually, the new Grantor, Terry Dairy, LLC and/or the Trust to Farm Credit, as well as any modifications, extensions or renewals thereto. The modification documents did not increase the face amounts secured by the Farm Credit CLDOTs.[1]

---

[1] The maximum principal amounts of the CLDOT's as modified remained $518,000.00, $1,400,000.00, and $110,000.00 respectively. The modification documents also substituted new trustees under the CLDOTs.

4

The Deed of Assumption was recorded in the Wythe County, Virginia Circuit Court Clerk's Office on October 22, 2015 at 2:22 p.m., and in the Smyth County, Virginia Circuit Court Clerk's Office at 4:15 p.m.[2]  At oral argument, the Debtor's counsel contended there was an approximate twenty-minute lag between the time the Deed of Assumption was recorded and the Deed of Trust modifications were recorded, and the subsequent recordation of the modifications caused the Debtor's conveyances under those modifications to render the Debtor insolvent and thus be fraudulent conveyances under 11 U.S.C. § 548.[3]  Complaint, ¶ 6–8. Further, the Debtor contends the modifications resulted in fraudulent and voluntary conveyances in violation of Va. Code §§ 55-80 and 55-81, exercisable by the Debtor under a trustee's powers of 11 U.S.C. § 544(b).  The Debtor further asks the Court to declare that all payments, monies, and transfers of the interest in real estate are void, and that the Court enter an order recovering those transfers for the benefit of the Debtor's estate.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of

---

[2] In paragraph 6 of the Complaint, the Debtor contends that "[o]n October 22, 2015 at 4:22 p.m. by a deed of assumption, the plaintiff became the owner of valuable property located in Smyth and Wythe Counties, Virginia." Complaint, ¶6.  Although Farm Credit admitted this allegation in its Answer, the 4:22 p.m. time is unexplained and is assumed to be typographical error.  Setting aside any differences between ownership and recordation, the Deed of Assumption was actually recorded in Wythe County, Virginia at 2:22 p.m. and in Smyth County, Virginia at 4:15 p.m. on October 22, 2015.   Farm Credit Ex. 7.

[3] The actual recording times of the CLDOT modifications were 2:45 p.m., 2:47 p.m. and 2:50 p.m. in Wythe County, Virginia.  Farm Credit Exs. 18, 16, & 14. The Complaint only mentions the modification to the $518,000.00 CLDOT. Farm Credit's Motion for Summary Judgment details the entire transaction.

Virginia.  This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (H), and (O).

### I.  Cross-Motions for Summary Judgment

Federal Rule of Civil Procedure 56, applicable in adversary proceedings through Federal Rule of Bankruptcy Procedure 7056, states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citing *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).  "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol*, 316 F.3d at 523 (citing *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996)).  Further, while mindful of the Fourth Circuit's guidance on the foregoing summary judgment standards, the Court is also mindful that "[t]he burden of proof of establishing the existence of elements of a voidable transfer under [S]ection 548 of the Bankruptcy Code rests on the trustee.[4] This burden of proof never shifts." *Ruby v. Ryan (In re Ryan)*, 472 B.R. 714, 725 (Bankr. E.D. Va. 2012).

Section 548(a) of the Bankruptcy Code contains several provisions allowing for the recovery of fraudulent conveyances. The Debtor cites only generally to Section 548, and the Court will assume that the Debtor is referring to Section 548(a)(1)(B), in that the Debtor states at

---

[4] All of the avoidance powers under Chapter 5 of the Bankruptcy Code, including 11 U.S.C. § 548, are vested in the debtor in possession in a case under Chapter 12.  *See* 8 *Collier on Bankruptcy* ¶ 1203.02[2].

paragraph 7 of the Complaint that the Debtor did not receive "reasonably equivalent value" from Farm Credit in exchange for the alleged transfer. Complaint ¶ 7. Further, in paragraph 8 of the Complaint the Debtor alleges that "[a]s a result of the transfer the Debtor became insolvent during the two-year period before November 2, 2016 and was engaged in business for which any property remaining was an unreasonably small capital." Complaint ¶ 8. Section 548(a)(1)(B) of the Bankruptcy Code provides as follows:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily— . . .
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. §548(a)(1)(B).

The premise of the Debtor's Complaint appears to be that at some point it owned the real estate conveyed to it from the Trust free and clear of any interest of Farm Credit, and that the recordation of the modification documents encumbered the real estate, amounting to "a transfer of an interest of the debtor in property" which rendered the Debtor insolvent or with unreasonably small capital to operate. The Debtor's Complaint is fundamentally flawed, for as Farm Credit accurately points out, there was never a time when the Debtor owned the real estate free and clear of Farm Credit's CLDOTs. This was one consolidated transaction, not one

7

transaction followed by another, and the Debtor acquired the real estate with the liens in favor of Farm Credit already imposed upon it.  There was no subsequent conveyance that resulted in the Debtor becoming insolvent or being left with unreasonably small capital.  The "gap" or "lag" in recordation times is immaterial and of no moment.

The Debtor contends that summary judgment for Farm Credit is inappropriate because Farm Credit has submitted no evidence to demonstrate that this was a single, consolidated transaction.  The evidence, however, is in Farm Credit's documents, the authenticity and accuracy of which the Debtor has not questioned.  First, the Agreement between the Debtor, the Debtor's principals, and the Debtor's predecessor in interest, the Trust, contemplated a transaction exactly as the one that transpired.  The real estate was conveyed from the Trust to the Debtor, with the Debtor assuming the debt of the Trust—which included the debt of Dairy LLC.  The signature lines on the documents reflect all documents were signed on the same day, October 19, 2015, and notarized by the same notary.  Further, the documents were recorded sequentially in Wythe County, Virginia, one right after the other.  The Deed of Assumption was recorded as Instrument No. 150002808, and the three deed of trust modifications were recorded as Instrument Nos. 150002809, 150002810 and 150002811.  *See* Farm Credit Exs. 18, 16, & 14.  Thereafter, the original documents appear to have been taken to adjoining Smyth County, Virginia, where they were again recorded not entirely sequentially, but within minutes of each other, as Instrument Nos. 150002222, 150002225, and 150002227.  *Id.*  In other words, the Debtor complains that the transfer *out* of the CLDOT modifications made it insolvent, but it conveniently ignores the fact that but for this transaction, there would have been no transfer *in*—and the Debtor would have had no real property at all.

8

Section 548(a)(1)(B) permits avoidance of a transfer if it is established that the debtor had an interest in the property, that a transfer of that interest occurred within two years of the filing of the petition, that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof, and that the debtor received less than reasonable equivalent value in exchange for such transfer.  *See BFP v. Resolution Trust Corp.,* 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).[5]  "Value" for the purposes of Section 548 is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor."  11 U.S.C. §548(d)(2)(A).  *See LandAmerica Financial Group, Inc. v. Southern California Edison Co.*, 525 B.R. 308, 314 (E.D. Va. 2015). "An interest in property, for purposes of [Section] 548, includes any interest of the debtor that would have been preserved for the benefit of the bankruptcy estate but for the alleged transfer." *Matter of Besing,* 981 F.2d 1488, 1493 (5th Cir.1993); s*ee also A.W. Lawrence & Co., Inc. v. Burstein* (*In re A.W. Lawrence & Co., Inc.*)*,* 346 B.R. 51, 56 (Bankr. N.D. N.Y. 2006); 5 *Collier on Bankruptcy* ¶ 548.03[2][a] ("[N]ot all transfers are within section 548's scope; only those that affect property that would have been property of the estate but for the transfer.").

The purpose of Section 548 is "to preserve the debtor's estate for the benefit of its unsecured creditors." *LandAmerica,* 525 B.R. at 314; *In re Ryan*, 472 B.R. at 724–25.  Thus, "so long as 'the value of the benefit received by the debtor approximates the value of the property or obligation he has given up,'" the transfer is not fraudulent.  *LandAmerica*, 525 B.R. at 314 (quoting *Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 991–92 (2d Cir. 1981)).  "In other

---

[5] *BFP* addressed a one year reach back.  Pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), signed into law on April 20, 2005, and made applicable to cases filed after October 16, 2005, 11 U.S.C. § 548 was amended to allow avoidance of a transfer of an interest of a debtor that occurred within *two* years of the filing of the petition.

9

words, the proper 'focus is whether the net effect of the transaction has depleted the bankruptcy estate.'" *Id.* (quoting *Jeffrey Bigelow Design Group, Inc*. 956 F.2d 479, 485 (4th Cir. 1992)).

Given the guidance above, the Court focuses here on (i) whether there was a transfer of an interest of the Debtor in property that would have been preserved but for the transaction with Farm Credit, and (ii) and whether the net effect of the transaction has depleted the Debtor's estate. The Court concludes that the answer to both questions is no.

There was no "transfer of an interest of the debtor in property" to be preserved but for the recordation of the CLDOT modification documents about which the Debtor complains. Moreover, recordation of the CLDOT modifications did not adversely affect any creditor by transferring property that would have been available for distribution to creditors had the Debtor not recorded those modifications. To the contrary, but for the transaction with Farm Credit under the Agreement—and the deed of trust modifications that were part and parcel of that agreement—the Debtor would have owned no real estate at all. The Debtor took the real property with Farm Credit's liens already imposed upon it, and all as a part of the same transaction, the Debtor became an obligor on the debt to Farm Credit. Had that not happened, under the express terms of the Agreement, the real property would never have been deeded to the Debtor in the first place.

The parties do not dispute the accuracy or authenticity of the documents in the record. These documents clearly demonstrate that Farm Credit, the Debtor, and each of the other parties intended the transaction to occur exactly as it did. Under the Agreement, the Debtor received title to the real estate subject to the already existing CLDOTs in favor of Farm Credit. The record demonstrates that there was never a time when the Debtor owned any real estate free and clear of Farm Credit's liens. There has not been a transfer of an interest of the debtor in property

10

that was subject to being administered in this case.  Further, because the Debtor never owned an unencumbered real estate, there "was no depletion of the bankruptcy estate" within the scope of *Jeffrey Bigelow Design* and *LandAmerica*.  Further, the Complaint alleges no facts sufficient to support an intent to hinder, delay or defraud creditors within the scope of Va. Code § 55-80, nor does it allege facts sufficient to substantiate a voluntary conveyance without valuable consideration within the scope of Va. Code § 55-81.  The latter claim fails for all the same reasons the Section 548(a)(1)(B) claim fails.  Accordingly, there is no genuine dispute as to any material fact, and Farm Credit is entitled to judgment as a matter of law.[6]  Likewise, the Debtor's motion for summary judgment will be denied.

## II.    Motion to Amend the Complaint

The Debtor filed a motion to amend the Complaint less than one week prior to oral argument on the summary judgment motions. The Debtor seeks to expand his Complaint to encompass all three CLDOTs, rather than the single instrument attached to the original Complaint.  In addition, the Debtor seeks to add a claim to avoid a guarantee in favor of Dairy LLC.  "[A] court may deny a request for leave to amend 'when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'"  *Scott v. Branch Banking & Trust Co.*, 588 F.Supp.2d 667, 671 (W.D. Va. 2008) (quoting *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 446 (4th Cir. 2001)).  The additional "transfers" that the Debtor wishes to avoid through its proposed amended Complaint are each encompassed as part of the Agreement discussed above.

---

[6] Because the Court concludes that there was no actionable transfer within the purview of Section 548(a)(1)(B), the Court need not reach the issues of insolvency or unreasonably small capital. Likewise, because the Court has concluded there was no actionable transfer, the Court need not address the Debtor's contention that the alleged transfer is avoidable because it was for the benefit of a third party.

Absent each of these "transfers," the real property would never have been deeded to the Debtor in the first place. Moreover, under the Agreement, the Debtor agreed to be a co-borrower, not a guarantor, on the obligations of Terry Dairy, LLC as successor obligor to the Trust as an express condition of the transfer of the real estate to the Debtor. *See* Agreement ¶ 1.2 (a)–(e). According to the express terms of the Agreement, none of the property that the proposed amended Complaint alleges was transferred would have been property of the estate but for the alleged transfers the Debtor now seeks to avoid. Accordingly, the Court's analysis of those claims is the same as for the single transfer alleged in the original Complaint and the amendment to the Complaint would be futile. The Debtor's motion to amend the Complaint is denied.

## CONCLUSION

This adversary proceeding presents no genuine issues of material fact. The documents in the record demonstrate that, as part of a single unified transaction, the Debtor agreed to take title to its real estate subject to already-existing deeds of trust in favor of Farm Credit. Absent the agreement to take title to the real estate subject to the existing liens, the Debtor would not have been deeded the real estate and would have no assets at all. Thus, there was no depletion of the estate by virtue of the Agreement and restructure with Farm Credit, of which the CLDOT modifications were an integral part. Accordingly, the Court finds that no "transfer of an interest of the debtor in property" within the meaning of 11 U.S.C. § 548 has occurred, and Farm Credit is entitled to judgment as a matter of law.

The Court will grant Farm Credit's Motion for Summary Judgment, deny the Debtor's Motion for Summary Judgment, deny the Debtor's Motion to Amend the Complaint, and dismiss the Complaint.

A separate Order will be entered contemporaneously herewith.

Decided this 3rd day of February, 2017.

*[signature: Paul M. Black]*

UNITED STATES BANKRUPTCY JUDGE